UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                                   **Hon. Hugh B. Scott**

          v.

                                                                   05CR72S

                                                                    **Report**
DOUGLAS A. WRIGHT,                                **&**
                                                                    **Recommendation**

                   Defendant.
_____

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 20). The instant matter before the Court is defendant's (Docket No. 24[1]) omnibus motion seeking various forms of relief. Through extensions, post-hearing submissions were due by June 11, 2007, including submission for <u>in camera</u> inspection the City of Tonawanda search warrant application (Docket No. 38). For judicial efficiency and convenience, the controverted items that could be decided in an Order are being considered here in this Report & Recommendation.

**BACKGROUND**

Defendant was indicted on March 16, 2005, for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); possession with intent to distribute

---

[1] Defendant attempted to file this motion but it was rejected for ECF guideline deficiencies, Docket No. 23. In support of this motion, defendant filed his attorney's affidavit, Docket No. 24. In opposition, the Government filed a responding affidavit, Docket No. 25.

a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1); and three counts of possession of a firearm (a Marlin 9 mm. rifle) and ammunition by a convicted felon and possession of the same while using marijuana, each in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Docket No. 19, Indict.).

Defendant moved for Rule 16 discovery, notice under Rule 12(b)(4)(B) of the Government's intentions regarding this discovery, Bill of Particulars, search of government agent personnel files, preservation of evidence, disclosure of residual exception statements under Federal Rule of Evidence 807, production of Brady material, disclosure of informants' identities, Rule 404(b) disclosure, motion to suppress defendant's statements and evidence obtained from the Tonawanda City Court search warrant (Docket No. 24).

The Government responded to the extent it intends to disclose (Docket No. 25).

The Court scheduled a suppression hearing, which was adjourned several times and held on February 8, 2007, and March 8, 2007 (Docket Nos. 35, 36). The parties were given until April 30, 2007, to submit any post-hearing briefing (Docket No. 36). Defendant then sought a brief extension to May 4, 2007 (letter to Chambers, April 30, 2007) and then moved (with the Government) for an extension of time due to not having the hearing transcripts (Docket No. 37), which was granted (Docket No. 38, Order of May 10, 2007), giving the parties until June 11, 2007, to file their post-hearing papers. That Order also had the Government submit for in camera inspection the search warrant application materials (id.). To date, the parties have not submitted

any post-hearing papers or requested a further extension of time and the Government has not submitted the search warrant application for Court inspection[2].

*Motion to Suppress*

On December 7, 2003, the Tonawanda Police Department executed a search warrant at 37 William Street, upper apartment, City of Tonawanda, New York, allegedly recovering a Marlin 9 mm. rifle and ammunition (Docket No. 24, Def. Atty. Aff. ¶ 46). Defendant purportedly admitted during that search that the weapon and ammunition were his (id.) and defendant was immediately arrested (id. ¶ 47). Defendant then allegedly stated that he kept marijuana in a bedroom cupboard (id.). A subsequent search found more marijuana and the firearm and ammunition (id.). When asked whether the weapon was his or a girlfriend's, defendant stated that it was his (id. ¶ 48).

Defendant argues that there was no probable cause to support the warrant or his later arrest (id. ¶¶ 48, 61), that the warrant did not describe with particularity the places to be searched (omitting, for example, the attic where the rifle was found) and the persons or things to be seized (id. ¶¶ 59, 63), and did not incorporate the supporting affidavit of Detective Robert Clontz (id. ¶¶ 59).

The Government opposed this motion, arguing that defendant was not entitled to disclosure of the in camera testimony utilized to secure the search warrant (Docket No. 25, Gov't Response ¶ 27), offering to seek the in camera testimony from the Tonwanda City Court for in

---

[2]For Speedy Trial Act purposes, the motion was submitted as of June 11, 2007, when no further submissions were made, see 18 U.S.C. § 3161(h)(1)(F), with the Court's consideration of the motion under advisement for the next thirty days further tolling the Speedy Trial clock, see id. § 3161(h)(1)(J).

camera review by this Court (id.).  The Government also contests defendant's standing to challenge the search (id. ¶ 26).  If defendant is deemed to have standing, the Government argues that the search was supported by probable cause (id. ¶¶ 28-29) and, even if found defective, the officers executing the warrant could rely upon it, see United States v. Leon, 468 U.S. 897 (1984) (id. ¶¶ 30-31).

During the suppression hearing, the Government called Detective Clontz and defendant called Michelle Tracy.  Clontz testified that defendant was advised of his Miranda rights eleven minutes after the police entered and commenced their search.

Tracy, defendant's fiancee, testified that (while she was being advised of her Miranda rights) she did not hear defendant being advised of his rights.  She was in their bedroom when defendant went to the door and opened it to the police.  She heard the officers ask defendant "where's the stuff" and did not hear them advise defendant of his Miranda rights.  Under cross-examination, Tracy admitted that she could not discern the conversations among the police officers in the next room but she steadfastly testified that she only heard defendant answer the "where's the stuff" question.

## DISCUSSION

I.   Discovery

Defendant seeks various items of pretrial discovery.  Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment.  In addition, the Government has certain disclosure

obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

The Government declared its intention to use all evidence disclosed in voluntary discovery (Docket No. 25, Gov't Response ¶ 8).

II.     Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

Upon review of the Indictment, the Court finds that defendant **is not entitled** to a Bill of Particulars inasmuch as the defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy. While defendant seeks particularization regarding co-conspirators and other unnamed individuals (Docket No. 24, Def. Atty. Aff. ¶ 12), the Indictment charges actions committed by defendant only.

III.     Search of Government Agents' Personnel Files

Next, defendant seeks a search of government agents' files for any potential <u>Brady</u> or <u>Giglio</u> material (Docket No. 24, Def. Atty. Aff. ¶ 13). The Government states that it understands its obligations under <u>Giglio</u> and will comply (Docket No. 25, Gov't Response ¶ 16). This response is sufficient.

IV.     Preservation of Evidence

Defendant next has requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 24, Def. Atty. Aff. ¶¶ 17-20). The Government acknowledged its obligation to preserve agents' notes that were reduced to typewritten memoranda or reports (Docket No. 25, Gov't Response ¶ 17). The Government keeping this obligation is sufficient.

V.     Residual Statements Under Rule 807

Defendant next seeks disclosure of residual statements pursuant to Rule 807 (Docket No. 24, Def. Atty. Aff. ¶ 21). The Government contends that it is not aware of any such statements (Docket No. 25, Gov't Response ¶ 18). If the Government later learns of such statements, it shall produce them.

VI.     <u>Brady</u> Materials

Defendant has requested that the Government disclose all materials potentially favorable to him, including information to be used for the impeachment of the Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or

information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain. The Government's written response is as follows: "At the present time, the government is not in possession of any 'exculpatory' material within the contemplation of Brady, but does acknowledge its continuing duty under Brady to produce such material" (Docket No. 25, Gov't Response ¶ 19).

It is unclear as to whether the Government's response included considerations regarding "impeachment" Brady material as well as exculpatory Brady material.

Neither the Supreme Court nor the Second Circuit[3] has ruled directly on whether a there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the timing such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent, conflict between the Government's obligations to disclose under Brady and the Government's right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure. United States v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979) (the court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); United States v. Perez,

---

[3] In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

870 F.2d 1222 (7th Cir. 1989) (the Government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); United States v. Ziperstein, 601 F.2d 281 (7th Cir. 1979) (a defendant receives a fair trial, notwithstanding delayed disclosure of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence); but see United States v. Wilson, 565 F. Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); United States v. Biaggi, 675 F. Supp. 790 (S.D.N.Y. 1987) (information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); United States v. Feldman, 731 F. Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the Government to disclose Brady impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by Government witnesses. Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles. To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. Campagnuolo, supra, 592 F.2d at 860; but see United States v. Presser, 844 F.2d 1275 (6th Cir. 1988) (the Government may not be compelled to pretrial disclosure of Brady or Jencks material). The record in this case does not reflect whether any of the materials withheld by the Government may be considered both Brady and Jencks material. Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act. During one conference in this matter, the Government announced its intention to provide Jencks Act material to Burning (see Docket No. 32, minute entry of Dec. 12, 2006).

This Court believes that fundamental fairness and the constitutional due process requirements which underlie <u>Brady</u> mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined <u>Brady</u>/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." <u>United States v. Percevault</u>, 490 F.2d 126 (2d Cir. 1974); <u>United States v. Green</u>, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

VII.   Identity of Informants

Defendant next seeks the pre-trial disclosure of the identity of any informants in this case (Docket No. 24, Def. Atty. Aff. ¶¶ 31-42). The Government is not required to furnish the identities of informants unless it is essential to the defense. <u>Roviaro v. United States</u>, 353 U.S. 52, 60-61 (1957); <u>United States v. Saa</u>, 859 F.2d 1067, 1073 (2d Cir.) <u>cert. denied</u> 489 U.S. 1089 (1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. <u>United States v. Bejasa</u>, 904 F.2d 137, 139 (2d Cir.), <u>cert. denied</u>, 498 U.S. 921 (1990). Moreover, the Government has stated that it believes that disclosure of the informant's

identification would subject the informant to personal danger from retribution by the defendant and others.

Defendant has not established that the pre-trial disclosure of the identities of any informants is essential to his defense. This request is **denied**.

VIII.   Rule 404 Evidence

Defendant next requests disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b) (Docket No. 24, Def. Atty. Aff. ¶¶ 43-45).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government has represented that it is now not aware of such information but it will provide all such material to the defendant at the time provided in the trial court's scheduling Order in this case (Docket No. 25, Gov't Response ¶ 43). This is sufficient in this case.

IX.   Suppression

Finally, defendant seeks to suppress statements he made to City of Tonawanda police during the search of his apartment and during his arrest. He challenges whether there was probable cause to issue the search warrant or probable cause to believe that defendant committed a crime (Docket No. 24, Def. Atty. Aff. ¶¶ 49, 50). He seeks production of the in camera testimony of the confidential informant whose testimony supported the search warrant application (id. ¶ 58). He also moves to suppress because the warrant did not particularize the

areas to be searched and did not specifically authorize the search of the attic in the house (id. ¶ 59).

The Government initially contends that defendant did not state how his rights were violated by City of Tonawanda police (Docket No. 25, Gov't Response ¶ 24). The Government also disputes whether defendant has standing to contest the search, since he has not shown that he had an expectation of privacy in that location (id. ¶ 26). The Government argues that defendant is not entitled to production of the in camera testimony, and any deficiency is cured by United States v. Leon, 468 U.S. 897 (1984) (id. ¶ 27).

A.   Standing

As for the Government's argument that defendant lacked an expectation of privacy in that apartment, defense testimony from his fiancee Michelle Tracy established that he lived and slept in that apartment at the time of the search. This is sufficient proof to give defendant standing to contest this search. Defendant has automatic standing to contest the alleged possession offenses, Rakas v. Illinois, 439 U.S. 128, 135 (1978); Jones v. United States, 362 U.S. 257, 264 (1960), as well as his possessory interest (not disputed by evidence from the Government herein), Rakas, supra, 439 U.S. at 135-36. Defendant therefore **has standing** to contest this search.

B.   Search Warrant–Probable Cause

The Government did not produce the search warrant application either within the moving papers, at the evidentiary hearing, or for in camera inspection following the suppression hearing as ordered by this Court (see Docket No. 38). Thus, it is difficult to assess whether reliance upon the warrant is objectively reasonable where the supporting affidavits for that warrant have not been produced to this Court. In order for the police officers to rely upon a search warrant under Leon, the supporting affidavit needs indicia of probable cause to render its existence reasonable,

cf. Leon, supra, 468 U.S. at 923. Also, suppression may be warranted if the judge issuing the warrant was misled by information in a supporting affidavit known by the affiant to be false, id. While deference should be given to the findings of the court issuing the warrant, see United States v. Ventresca, 380 U.S. 102, 108 (1965), this Court needs to be provided some information about the other court's findings. On the present record (or absence of a record), this Court cannot tell whether the supporting affidavit was true or whether it had the indicia of probable cause or whether it was a "bare bones" affidavit, see Leon, supra, 468 U.S. at 923 & n. 24. The Government was given ample time to produce this material, even to provide it for in camera inspection for the Court to determine whether defendant should see it as well. Defendant's motion to suppress evidence obtained under this search warrant, therefore, should be **granted**.

    C.    Miranda Warning

Defendant contends that he was not advised of his Miranda rights prior to this statements locating the contraband. The Government's witness testified that he issued the warning eleven minutes after entering the apartment to start the search, while Tracy testified that (while she received the warning) she did not hear defendant being administered the warning. From Tracy's testimony, the officers asked defendant where the stuff was and he answered prior to any Miranda warning being given (and her recollection was that no such warning was ever given). She was in a position (in the next room) to hear the conversations between the officers and defendant. This Court finds that defendant was not advised of his Miranda rights prior to police questioning, in particular questioning about the location of the contraband. As a result, defendant's statements **should be suppressed** and his motion for this relief **should be granted**.

**CONCLUSION**

Based upon the above, defendant's omnibus motion (Docket No. 24) is **granted in part, denied in part** as outlined in detail above.

It is recommended that Defendant's motion to suppress his statements (Docket No. 24) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      July 9, 2007